788 F.2d 600
 Geraldine SHAW and Ronald Roscoe Shaw, Plaintiffs-Appellants,
v.
STATE OF CALIFORNIA DEPARTMENT OF ALCOHOLIC BEVERAGE
CONTROL; Jay R. Stroh, as Director of the Department of
Alcoholic Beverage Control; City of San Jose, a municipal
corporation; San Jose Police Department; and Joseph
McNamara, Chief of Police of the City of San Jose,
Defendants-Appellees.
 No. 84-1895.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 13, 1985.
Decided April 28, 1986.
 
 Ronald Rosco Shaw, San Jose, Cal., for plaintiffs-appellants.
 Victor D. Sonenberg, Dep. Atty. Gen., San Francisco, Cal., Daniel J. Wallace & William B. Mayfield, San Jose, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before: SKOPIL, REINHARDT, and HALL, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 I. BACKGROUND
 
 1
 Geraldine Shaw and Ronald Shaw were the holders of a California liquor license under which they owned and operated a bar in San Jose, California. In August, 1981 the California Department of Alcoholic Beverage Control (the ABC) filed an accusation against the Shaws, charging them with various violations of state liquor laws and regulations, and seeking to revoke their liquor license. A hearing was held at which the Shaws' defense was based in part on a claim that the San Jose Police Department was enforcing the laws against the Shaws in a discriminatory and harassing manner because of the Shaws' race, and that the ABC had obtained the vast bulk of the evidence in the case through the Police Department. The ABC ordered that the Shaws' liquor license be revoked, and the Shaws appealed to the Alcoholic Beverage Controls Appeals Board (the Appeals Board), which affirmed. The California Court of Appeal denied a petition for a writ of review, and the California Supreme Court denied a hearing. The Shaws' liquor license was revoked in October, 1983. For a short time the Shaws continued to serve food, without liquor, on their premises, but closed the business in November, 1983.
 
 
 2
 In September, 1983 the Shaws filed a civil rights action under 42 U.S.C. Sec. 1983 (1982) against the ABC, Jay R. Stroh as director of the ABC, the City of San Jose, the Police Department, and Joseph McNamara as the Chief of Police. The complaint, as amended, alleged that the ABC and Stroh had improperly revoked the Shaws' liquor license in violation of their constitutional rights, and that the City, the Police Department, and McNamara had engaged in a campaign of discriminatory enforcement of the law based on the Shaws' race, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The Shaws sought money damages, an injunction against the municipal defendants barring police harassment, and an injunction requiring the ABC and Stroh to reinstate the Shaws' liquor license. The district court granted the defendants' motions to dismiss, and the Shaws appealed.
 
 
 3
 A decision to dismiss for failure to state a claim is reviewable de novo. North Star International v. Arizona Corporation Commission, 720 F.2d 578, 580 (9th Cir.1983). All material allegations in the complaint are to be accepted as true and all doubts are to be resolved in favor of the plaintiff. Ernest W. Hahn, Inc. v. Codding, 615 F.2d 830, 834-35 (9th Cir.1980). We may affirm the judgment on any basis supported by the record even if the district court did not rely on that basis. United States v. County of Humboldt, 628 F.2d 549, 551 (9th Cir.1980).
 
 II. ELEVENTH AMENDMENT
 
 4
 The Shaws' complaint seeks an award of damages and injunctive relief against the ABC and Stroh as director of the ABC. The Eleventh Amendment to the United States Constitution provides that:
 
 
 5
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 6
 Despite its language, which would seem to indicate the contrary, the Eleventh Amendment has been held to bar suits against a state brought by its own citizens, whether the relief sought is money damages or an injunction. See Atascadero State Hospital v. Scanlon, --- U.S. ----, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98-99, 102, 104 S.Ct. 900, 906-07, 909, 79 L.Ed.2d 67 (1984) (Pennhurst II ). Furthermore, a suit against a state agency is considered to be a suit against the state, and thus is barred by the Eleventh Amendment. Pennhurst II, 465 U.S. at 100, 104 S.Ct. at 907. Because California has not waived its Eleventh Amendment immunity, Atascadero State Hospital, 105 S.Ct. at 3147, the district court properly dismissed the ABC as a party.
 
 
 7
 An action for money damages against a state official is also considered to be a suit against the state, and thus barred by the Eleventh Amendment, if "the state is the real, substantial party in interest," or if judgment is sought against the public treasury. Pennhurst II, 465 U.S. at 101, 104 S.Ct. at 907; Demery v. Kupperman, 735 F.2d 1139, 1145-46 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). Because the Shaws' claim for damages is against Stroh in his official capacity as director of the ABC, and not against him as an individual, the state is the real party in interest and any judgment would be against the public treasury. Accordingly, the district court properly dismissed that claim. See Demery, 735 F.2d at 1145-46. A claim against a state official seeking prospective injunctive relief from unconstitutional state action is not, however, barred by the Eleventh Amendment. Pennhurst II, 465 U.S. at 102, 104 S.Ct. at 909; Demery, 735 F.2d at 1146. Accordingly, we can hear the Shaws' claim against Stroh for prospective injunctive relief.
 
 
 8
 III. THE STATUS OF THE SAN JOSE POLICE DEPARTMENT AS A PARTY
 
 
 9
 The defendants have argued that the Police Department was correctly dismissed because under the San Jose City Charter it is not a legal entity with capacity to be sued. Under Rule 17(b) of the Federal Rules of Civil Procedure, the Police Department's capacity to be sued in federal court is to be determined by the law of California. Section 945 of the California Government Code provides that "[a] public entity may sue and be sued." Section 811.2 of the Government Code defines a "public entity" to include "the State, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or political corporation in the State."
 
 
 10
 The courts of California have not expressly determined whether a police department is a public entity under section 811.2. They have, however, held that a police department is a public entity under section 200 of the California Evidence Code. That section provides that for purposes of the Evidence Code, a "public entity" includes "a nation, state, county, city and county, city, district, public authority, public agency, or any other political subdivision or public corporation whether foreign or domestic." The wording of the two sections is nearly identical, except for the inclusion in section 200 of foreign entities, and the California courts have treated the two sections as including the same domestic entities. See, e.g., Rhyne v. Municipal Court, 113 Cal.App.3d 807, 170 Cal.Rptr. 312 (1980); Vallas v. City of Chula Vista, 56 Cal.App.3d 382, 128 Cal.Rptr. 469 (1976), overruled on other grounds, Peterson v. City of Long Beach, 24 Cal.3d 238, 155 Cal.Rptr. 360, 594 P.2d 477 (1979). See also Peterson (implicity equating two sections).
 
 
 11
 In Vallas, the Court of Appeal held that a police department could not be a public entity under section 200 because a public entity must have some degree of sovereignty; a public entity could not be merely a department within a city. 56 Cal.App.3d at 387, 128 Cal.Rptr. at 472-73. The California Supreme Court overruled Vallas on this very point in Peterson. The court rejected the "sovereignty" test and held that a police department was a public entity under section 200 because it was a public agency. The police department "traditionally has been regarded as an 'agency' of the city [and is] obviously 'public.' " 24 Cal.3d at 244, 155 Cal.Rptr. at 363, 594 P.2d at 480. In none of these cases were city charter provisions even mentioned, and indeed the terms of the charter are irrelevant. The California Supreme Court has held that governmental liability is not a "municipal affair." Societa per Azioni de Navigazione Italia v. City of Los Angeles, 31 Cal.3d 446, 183 Cal.Rptr. 51, 645 P.2d 102, cert. denied, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). Thus, a city charter provision cannot alter the rules of governmental liability provided by state law. Id.; Birkenfeld v. City of Berkeley, 17 Cal.3d 129, 130 Cal.Rptr. 465, 550 P.2d 1001 (1976).
 
 
 12
 Because section 200 and section 811.2 have been construed in pari materia, we conclude that the courts of California would hold that the Police Department is a public entity under section 811.2. Thus, under Fed.R.Civ.P. 17(b) the Police Department may be sued in Federal court.[1]
 
 
 13
 IV. THE PRECLUSIVE EFFECT OF THE PRIOR DECISIONS--GENERAL
 
 
 14
 The defendants argue that the prior decisions of the state tribunals preclude the present suit. In a section 1983 action we are required to give state "judicial proceedings" precisely the same preclusive effect they would have in the courts of California. 28 U.S.C. Sec. 1738 (1982); Marrese v. American Academy of Orthopaedic Surgeons, --- U.S. ----, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In order to determine what preclusive effect the prior decisions have here, it is first necessary to define our terms clearly. The doctrine of "claim preclusion" bars the relitigation of a claim, even if the particular theories of recovery or defenses raised in the second proceeding were not actually litigated in the first action. Claim preclusion is also known as the doctrine of merger and bar, and is synonymous with "res judicata" when that expression is used in a narrow sense. The doctrine of "issue preclusion" bars the relitigation of all issues that were litigated in a prior proceeding, even if the second proceeding is an action on a claim different from the one asserted in the first action. Issue preclusion encompasses the doctrines of direct and collateral estoppel.[2] Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529 (9th Cir.1985); Jones v. City of Alton, 757 F.2d 878, 879 n. 1 (7th Cir.1985); Restatement (Second) of Judgments, introductory note to ch. 3, Sec. 17 comment (1982).
 
 V. CLAIM PRECLUSION
 A. Injunctive Relief Against Stroh
 
 15
 The Shaws seek an injunction requiring Stroh as Director of the ABC to reinstate the liquor license which the agency revoked. Thus, the Shaws seek to relitigate in the federal courts the same claim they litigated in front of the ABC, the Appeals Board, and the Court of Appeal.[3] California law of claim preclusion bars the claim for injunctive relief. See, e.g., Consumers Lobby Against Monopolies v. Public Utilities Commission, 25 Cal.3d 891, 900-01, 160 Cal.Rptr. 124, 129, 603 P.2d 41, 46 (1979); Hollywood Circle, Inc. v. Department of Alcoholic Beverage Control, 55 Cal.2d 728, 732-33, 13 Cal.Rptr. 104, 107, 361 P.2d 712, 715 (1961) (Traynor, J.). The Shaws are seeking to collaterally attack the ABC proceedings; they may not do so. The California Legislature has set up a detailed and comprehensive scheme for the review of ABC decisions[4] and it is clear that a collateral attack of the type the Shaws seek to engage in would not be allowed. See Hollywood Circle; People v. Sims, 32 Cal.3d 468, 478, 186 Cal.Rptr. 77, 83, 651 P.2d 321, 327 (1982); see also Dash, Inc. v. Alcoholic Beverage Control Appeals Board, 683 F.2d 1229 (9th Cir.1982). This bar cannot be overcome merely by naming the director of the ABC as a defendant.
 
 
 16
 The Shaws argue, however, that there cannot be any preclusion because they did not have a full and fair opportunity to litigate their claim in the state proceeding due to the existence under California law of limitations on the right to discovery before the ABC. The Supreme Court has held that neither claim nor issue preclusion can be applied by a federal court if there was not a full and fair opportunity to litigate in the state proceeding. Kremer v. Chemical Construction Corp., 456 U.S. 461, 480-81 & n. 22, 102 S.Ct. 1883, 1896-97 & n. 22, 72 L.Ed.2d 262 (1982). The Court stated that in the context of claim preclusion, a party has had a full and fair opportunity to litigate if the procedures provided meet the requirements of the Due Process Clause of the Fourteenth Amendment. Id. at 482-83 & n. 24, 102 S.Ct. at 1898 & n. 24.
 
 
 17
 The defendants appear to argue that our opinion in Dash rejected the precise argument the Shaws make here. Dash, however, dealt only with the issue of whether the ABC's inability to rule on certain constitutional claims denied an opportunity for full and fair litigation; we did not consider the restrictions on discovery in ABC proceedings. 683 F.2d at 1232-33.
 
 
 18
 After a careful review of the ABC procedures,[5] including the limitations on discovery,[6] we cannot say that the Shaws were denied due process in the administrative proceeding. Accordingly, Stroh was entitled to prevail on his defense of claim preclusion, and the claim for injunctive relief was properly dismissed. Because there were no claims against Stroh remaining, the district court correctly dismissed him as a defendant.
 
 
 19
 B. The City, the Police Department and McNamara
 
 
 20
 The remaining defendants, the municipal defendants, argue that claim preclusion bars the Shaws' action against them also. Those defendants, however, were not parties to the prior proceedings before the ABC, the Appeals Board, and the state courts, nor are they in privity with the defendants in those proceedings. As a result, under California law they are not entitled to the defense of claim preclusion. See, e.g., Cal.Civ.Proc.Code Secs. 1908, 1910; Leaf v. City of San Mateo, 104 Cal.App.3d 398, 409, 163 Cal.Rptr. 711, 717 (1980); 7 B. Witkin, California Procedure: Judgment Sec. 301 (3d ed. 1985).
 
 VI. ISSUE PRECLUSION
 
 21
 A. Police Conduct After ABC Proceedings Began
 
 
 22
 The municipal defendants also argue that issue preclusion bars the Shaws' action against them. Several of the allegations against the municipal defendants involve police conduct that occurred after the ABC proceedings began in the latter part of 1981, and obviously could not have been actually litigated in the state proceedings. Issue preclusion cannot be applied to issues that relate to that conduct. See People v. Sims, 32 Cal.3d 468, 484, 186 Cal.Rptr. 77, 87, 651 P.2d 321, 331 (1982) (stating general rule); Yager v. Yager, 7 Cal.2d 213, 217, 60 P.2d 422, 425 (1936) (no issue preclusion with respect to issues arising after first action commenced); Lake Merced Golf & Country Club v. Ocean Shore Railroad Co., 206 Cal.App.2d 421, 23 Cal.Rptr. 881 (1962) (same); 7 Witkin, supra, Judgment Sec. 270. Accordingly, issue preclusion cannot be applied to the claims regarding police conduct that occurred after the ABC hearing began. We must now determine whether issue preclusion bars the Shaws from asserting the claims that relate to police conduct that occurred prior to the ABC hearing.
 
 B. Full and Fair Opportunity to Litigate
 
 23
 The Shaws again claim that there can be no preclusion because restrictions on discovery deprived them of a full and fair opportunity to litigate their claims before the ABC. We need not decide that issue, however. We can give the state proceedings no greater preclusive effect than the state courts would, Marrese, 105 S.Ct. at 1334-35 (relying on principles of comity). As we explain below, under California law even if the general requirements for issue preclusion were met in this case,[7] one or more exceptions to the rule would apply, and the municipal defendants would therefore be unable to prevail on that defense.
 
 
 24
 C. Exception For Tribunals of Limited Jurisdiction.
 
 
 25
 The California courts have long held that if a court did not have the jurisdiction to decide an issue directly, neither claim nor issue preclusive effect will be given to an incidental determination of that issue by the court, even though the court did have jurisdiction to make the incidental determination. See, e.g., Estate of Freud, 134 Cal. 333, 66 P. 476 (1901); Bosquett v. Chapman, 51 Cal. 505 (1876). This was precisely the position taken by the first Restatement of Judgments:
 
 
 26
 Where a court has incidentally determined a matter which it would have had no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly.
 
 
 27
 Restatement of Judgments Sec. 71 (1942). See California Annotations to the Restatement of Judgments Sec. 71 (1953) (citing Freud ). A good example of the application of section 71 is in the area of probate: in an action for foreclosure of a mortgage it may be necessary for a court of general jurisdiction to determine the interests of the heirs in the property; the court's determination of that matter will have no effect in a later action to distribute the estate because only a probate court can directly determine such interests. See Freud; Restatement of Judgments Sec. 71 comment d, illustration 1 (as amended in Restatement of the Law: 1948 Supplement (1949)).
 
 
 28
 In considering whether there was jurisdiction to determine an issue directly the first time it was decided, a court looks to the jurisdiction of the court that conducted the hearing or trial in which the issue was resolved and not to the jurisdiction of the appellate court that reviewed the lower court's decision.[8] Similarly, when the initial determination is made by an administrative tribunal, we look solely to that tribunal's jurisdiction when we apply the rules of issue preclusion. Indeed, the initial forum rule applies with particular force in the case before us because under California law the Court of Appeal has only limited authority to review ABC proceedings.[9]
 
 
 29
 The ABC's jurisdiction is limited to determining whether a liquor license should be revoked or suspended.[10] The agency clearly has no jurisdiction to determine claims of police misconduct directly, even though it has the power to decide such questions as an incidental matter in the course of deciding whether a liquor license should be revoked. Thus, under section 71, issue preclusion would not be available to the municipal defendants as a defense.
 
 
 30
 Section 71 was continued in section 28(3) of the Restatement (Second) of Judgments. Section 28(3) provides that issue preclusion does not apply when "[a] new determination of the issue is warranted by ... factors relating to the allocation of jurisdiction between [the two tribunals] ..." In other words, "the question of preclusive effect should turn in each case on an analysis of the comparative quality and extensiveness of the procedures followed in the two [tribunals], of their relative competence to deal with the particular issue, and of the legislative purpose in allocating jurisdiction between them."[11] Illustration 9 gives the example of an action for forcible entry and detainer in which it is necessary to determine the marital status of the parties, and concludes that the determination of marital status will not have preclusive effect in a subsequent divorce proceeding where exclusive jurisdiction is placed in the family court.
 
 
 31
 While there is no indication that the California courts have retreated from the absolute rule of section 71 of the first Restatement, it is worth noting that the municipal defendants would also be barred from asserting issue preclusion as a defense under the test imposed by section 28(3) of the second Restatement.
 
 
 32
 First, the procedures used by the ABC, like those of almost any other California administrative tribunal, are quite different than those used by a court.[12] As noted above, discovery is severely limited in a proceeding before an administrative agency. Any relevant evidence is admissible, and the normal evidentiary objections are not permitted.[13]
 
 
 33
 Second, the ABC's expertise lies in the area of enforcement of the liquor laws, not in the determination of whether police misconduct rises to the level of a violation of the Constitution. The ABC's jurisdiction is limited to determining whether a certain narrow set of circumstances exists that, under the applicable statute, justifies revocation or suspension of a liquor license,[14] and does not include the power to determine claims of police misconduct directly. It is the courts, and not the ABC, that have the expertise in determining whether the Constitution has been violated.
 
 
 34
 Third, the purposes behind the division of jurisdiction between the ABC and the courts are clear. The ABC was established in order "to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages"[15] and to "ensure a strict, honest, impartial and uniform administration and enforcement of the liquor laws throughout the State."[16] Thus, the function of the ABC is to police the liquor laws and licensing requirements.[17] The function of the courts is, among other things, to interpret the Constitution. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177-78, 2 L.Ed. 60 (1803); Fenske v. Board of Administration, 103 Cal.App.3d 590, 595, 163 Cal.Rptr. 182, 185 (1980); Byers v. Board of Supervisors, 262 Cal.App.2d 148, 157-58, 68 Cal.Rptr. 549, 555 (1968).
 
 
 35
 The purposes behind the allocation of jurisdiction between the ABC and the courts, the difference in the relative expertise of the two bodies in the area of adjudicating unconstitutional police conduct, and the informal nature of litigation before the ABC, require the conclusion that, under section 28(3) of the second Restatement, the ABC's prior determination regarding the police conduct issue does not preclude a court from considering that question. Our conclusion is not changed by the fact that the Court of Appeal affirmed the decision of the ABC, because, as noted above, we look to the proceedings in the initial forum, not the appellate forum. In short, under section 28(3) as under section 71, issue preclusion is not available as a defense to the City, the Police Department, and McNamara.[18]
 
 D. Prior Ninth Circuit Opinions
 
 36
 Our prior opinions in Francisco Enterprises, Inc. v. Kirby, 482 F.2d 481 (9th Cir.1973), cert. denied, 415 U.S. 916, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974), and Dash, Inc. v. Alcoholic Beverage Control Appeals Board, 683 F.2d 1229 (9th Cir.1982), do not, contrary to the contentions of the municipal defendants, require us to give preclusive effect to the state proceedings with respect to the claims against those defendants. Both cases involved suits against the ABC or the Appeals Board in which the plaintiffs attempted to overturn license revocations, and both held, as we do here, in section V.A, supra, that relitigation of the agency's licensing determination is barred. Neither case involved a suit against a third party, neither sought relief unrelated to the issuance or revocation of a license, and neither required us to consider the various exceptions to the rule of issue preclusion that we have discussed above. The question in the case before us which was not present in Francisco Enterprises or Dash is whether an ABC licensing decision bars a subsequent action against a police department and others for unconstitutional police misconduct, a wholly different question in every respect from the one we previously decided.[19]
 
 E. Conclusions
 
 37
 We conclude that the California courts would hold as a matter of California law that issue preclusion cannot be applied to the issues raised by the Shaws relating to police conduct. The difference in allocation of jurisdiction between the ABC and the courts bars any use of issue preclusion, whether under the incidental determination rule set forth in section 71 of the first Restatement, or the more general test adopted in section 28(3) of the second Restatement. Thus, under 28 U.S.C. Sec. 1738, issue preclusion cannot be asserted by the City, the Police Department, or McNamara. See Marrese v. American Academy of Orthopaedic Surgeons, 105 S.Ct. 1327 (1985).
 
 VII. CAUSATION AND SECTION 1983
 
 38
 The City, the Police Department, and McNamara argue further that the complaint was properly dismissed as to them because the Shaws did not allege that they "caused" any deprivation of the Shaws' rights within the meaning of section 1983.
 
 
 39
 Municipalities, their agencies, and their supervisory personnel cannot be held liable under section 1983 on a theory of respondeat superior. They can, however, be held liable for deprivations of constitutional rights resulting from their policies or customs. Monell v. Department of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir.1984); Wanger v. Bonner, 621 F.2d 675, 680-81 (5th Cir.1980). The plaintiffs need not specifically allege a custom or policy; it is enough if the custom or policy can be inferred from the allegations of the complaint. Powe v. City of Chicago, 664 F.2d 639, 651 (7th Cir.1981); Starstead v. City of Superior, 533 F.Supp. 1365, 1369 (W.D.Wis.1982). The Shaws allege that for a period of almost four years San Jose police officers entered the bar as many as 18 times a shift, repeatedly brought police officers from other jurisdictions into the bar, attempted on more than one occasion to persuade the Shaws' employees to quit, tried more than once to dissuade customers from entering the bar, and arranged for multiple regulatory inspections by other City agencies. The Shaws further allege that these activities were undertaken because the Shaws are black; according to the complaint, other bars, owned by whites, were not treated in the same manner. In effect, the Shaws have alleged "a pattern or a series of incidents" of unconstitutional discriminatory enforcement of the laws. The courts have repeatedly held that such allegations constitute an allegation of policy sufficient to withstand a motion to dismiss. Powe, 664 F.2d at 650, 651; Turpin v. Mailet, 619 F.2d 196, 202 (2d Cir.), cert. denied, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); Starstead, 533 F.Supp. at 1369.
 
 
 40
 Under Monell, an allegation of action pursuant to an official policy adopted by the defendant is a sufficient allegation of causation. Thus causation was adequately pleaded as to the Police Department and its chief, McNamara. See, e.g., Ybarra; Wanger; Starstead; McDaniel v. Rhodes, 512 F.Supp. 117, 119 (S.D.Ohio 1981). As to the City, the policies of the Police Department became its policies because the policies set by the Department and its Chief "may be fairly said to represent official [City] policy" on police matters, Monell, 436 U.S. at 694, 98 S.Ct. at 2037, and the City is liable for any deprivation of constitutional rights caused by the execution of official City policies. Id.; McKinley v. City of Eloy, 705 F.2d 1110, 1116 (9th Cir.1983); Black v. Stephens, 662 F.2d 181, 191 (3d Cir.1981), cert. denied, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). Thus, we hold that there were sufficient allegations in the complaint that there was a City policy of discriminatory law enforcement and that the municipal defendants caused the Shaws to be deprived of their constitutional rights.
 
 VIII. CONCLUSION
 
 41
 Because we conclude that the San Jose Police Department is subject to suit in federal court, that the claims against the City, the Police Department, and Chief McNamara are not precluded by the prior state decisions and that the Shaws sufficiently alleged causation in their complaint, we reverse the dismissal of the claims against those defendants and remand for further proceedings consistent with this opinion. Because we also conclude that the Eleventh Amendment and the rules of claim preclusion bar the Shaws' claims against the ABC and Stroh we affirm the part of the judgment dismissing the claims against them.
 
 
 42
 REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
 
 
 
 [1]
 In Garcia v. County of Los Angeles, 588 F.Supp. 700, 707 (C.D.Cal.1984), the district court held that the Los Angeles County Sheriff's Department was not a "public entity" under Sec. 811.2. The only authority whatsoever cited for this conclusion was Ragusa v. Streator Police Dept., 530 F.Supp. 814, 815 n. 1 (N.D.Ill.1981). Ragusa cited no authority at all for its holding that the Streator Police Department did not have the capacity to be sued in federal court. Even if Ragusa had cited any authority, Illinois rules concerning capacity to be sued would seem to be of extremely little relevance when construing California law. Thus, we do not follow Garcia
 
 
 [2]
 The term "res judicata" can be used not only to refer to claim preclusion but also in a broader sense to include both issue and claim preclusion, Americana Fabrics, 754 F.2d at 1529, and the California courts have so used the term. See, e.g., People v. Sims, 32 Cal.3d 468, 477 n. 6, 186 Cal.Rptr. 77, 82 n. 6, 651 P.2d 321, 326 n. 6 (1982)
 
 
 [3]
 The denial of a hearing by the California Supreme Court did not constitute a decision on the merits. See, e.g., People v. Triggs, 8 Cal.3d 884, 106 Cal.Rptr. 408, 506 P.2d 232 (1973); Cal. Court R. 28 comment (as amended May 6, 1985). Claim preclusion can never result from a decision that is not on the merits. Busick v. Workmen's Compensation Appeals Board, 7 Cal.3d 967, 974, 104 Cal.Rptr. 42, 47-48, 500 P.2d 1386, 1391-92 (1972). Accordingly, the Supreme Court action is not relevant to our analysis here. A denial of a writ of review, however, is a decision on the merits even though the court did not issue an opinion. Consumers Lobby Against Monopolies v. Public Utilities Commission, 25 Cal.3d 891, 901, 160 Cal.Rptr. 124, 129, 603 P.2d 41, 46 (1979). Accordingly, we must consider the action of the Court of Appeal in this case
 
 
 [4]
 See Cal.Bus. & Prof.Code Secs. 23090-23090.7
 
 
 [5]
 The California Administrative Procedure Act, Cal.Gov't.Code Sec. 11500 et seq., applies to the proceedings of most administrative agencies, including the ABC. See Cal.Gov't.Code Sec. 11501; Cal.Bus. & Prof.Code Sec. 23052
 
 
 [6]
 See Cal.Gov't.Code Sec. 11507.6
 
 
 [7]
 We express no view as to whether issue preclusion would be applicable here but for the existence of the exceptions we discuss below. For a general discussion of issue preclusion under California law, see People v. Sims, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982)
 
 
 [8]
 This point is made clear by the example discussed above, which is taken from the amended illustration 1 to Sec. 71. Presumably, the same court of appeal reviews judgments from both courts, yet preclusive effect is not given to the earlier determination. Thus, it is clear that we look to the jurisdiction of the trial court, and not to that of the appellate court in determining whether the first tribunal to decide the issue could determine a matter directly
 
 
 [9]
 See Cal.Bus. & Prof.Code Secs. 23084, 23090.2, 23090.3, as interpreted in Walsh v. Kirby, 13 Cal.3d 95, 118 Cal.Rptr. 1, 529 P.2d 33 (1979); Kirby v. Alcoholic Beverage Control Appeals Board, 3 Cal.App.3d 209, 83 Cal.Rptr. 89 (1969); Harris v. Alcoholic Beverage Control Appeals Board, 212 Cal.App.2d 106, 28 Cal.Rptr. 74 (1963)
 
 
 [10]
 See Cal.Bus. & Prof.Code Sec. 24200 et seq. Under certain limited circumstances the ABC can impose a fine in lieu of suspension of a license. Cal.Bus. & Prof.Code Sec. 23095
 
 
 [11]
 Reporter's Note to Sec. 28; see also Sec. 28 com. d
 
 
 [12]
 See supra note 5
 
 
 [13]
 See Cal.Gov't.Code Sec. 11513(c)
 
 
 [14]
 The ABC is limited to considering the following as grounds for revocation or suspension: (i) violations of the liquor and narcotics laws and rules, (ii) misrepresentations of material facts in license applications, (iii) convictions for offenses involving moral turpitude, (iv) failure to correct nuisances after notice from a district attorney, and (v) the public welfare and morals to the extent they dictate a discontinuance of the liquor license. Cal. Const. art. XX, Sec. 22; Cal.Bus. & Prof.Code Secs. 24200, 24200.5
 
 
 [15]
 Cal.Bus. & Prof.Code Sec. 23001
 
 
 [16]
 Cal.Bus. & Prof.Code Sec. 23049
 
 
 [17]
 See People v. Demery, 104 Cal.App.3d 548, 163 Cal.Rptr. 814 (1980), discussed in note 18 infra
 
 
 [18]
 We note that under California law there may be two other exceptions to the rule of issue preclusion that apply as well. First, an exception may exist when the subsequent proceeding has different objectives than the first. See People v. Sims, 32 Cal.3d 468, 483, n. 13, 186 Cal.Rptr. 77, 86 n. 13, 651 P.2d 321, 330 n. 13 (1982); People v. Demery, 104 Cal.App.3d 548, 561, 163 Cal.Rptr. 814, 821 (1980). In Demery the court held that because the purpose of a State Board of Medical Quality Assurance proceeding is to enforce licensing requirements, while the purpose of a criminal trial is to determine guilt or innocence, the Board proceeding did not have issue preclusive effect at the trial. 104 Cal.App.3d at 561, 163 Cal.Rptr. at 821. See also Chamblin v. Municipal Court, 130 Cal.App.3d 115, 181 Cal.Rptr. 636 (1982) (Reynoso, J., sitting by designation) (purpose of probation revocation hearing and criminal trial are sufficiently different that no issue preclusive effect given to findings at hearing). But see Sims, 32 Cal.3d at 492-95, 186 Cal.Rptr. at 92-94, 651 P.2d at 336-38 (Kaus J. dissenting) (different objectives exception articulated in Demery cannot be reconciled with the Sims decision giving a Department of Social Services' finding that the state had failed to prove that welfare recipient was not entitled to benefits she received preclusive effect in subsequent criminal trial for welfare fraud). As noted above, the purpose of ABC proceedings is to enforce the liquor licensing requirements, while the purpose of a civil rights action is to determine whether certain governmental conduct violated the constitution
 Second, article I, section 16 of California Constitution, which guarantees the right to a jury trial, may prevent issue preclusive effect from being given to determinations of issues normally tried to a jury if no jury was available in the first forum. See Chamblin; Demery; Kelly v. Trans Globe Travel Bureau, Inc., 60 Cal.App.3d 195, 131 Cal.Rptr. 488 (1976). But see People v. Sims, 32 Cal.3d 468, 483 n. 13, 186 Cal.Rptr. 77, 86 n. 13, 651 P.2d 321, 330 n. 13 (1982) (dicta suggesting that issue preclusion applies even if no jury available in first forum).
 We need not consider, however, the status or applicability of either of these exceptions given our holding that under either section 71, or section 28(3), issue preclusion is not available as a defense to the municipal defendants.
 
 
 [19]
 We also note that Francisco Enterprises applied a general federal law of preclusion. None of the cases cited on the issue of preclusion were California cases; indeed none of the authority even came from the Ninth Circuit. After we decided Francisco Enterprises, the Supreme Court made it clear that we are not to create a special federal law of preclusion when deciding section 1983 cases; rather, we must apply state law. See, e.g., Marrese; Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); Haring v. Prosise, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). Thus, it would seem that although its result was correct, and although we reach the identical result today by applying state law, the rationale of Francisco Enterprises has been severely undercut. To the extent that Dash relies on that rationale its reasoning too is of limited utility